**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CORNELL JOE PARKER,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| vs. | ) Case No. 10-CV-757-TCK-PJC |
| | ) |
| **EDWARD EVANS, Interim Director,**[1] | ) |
| **Oklahoma Department of Corrections** | ) |
| | ) |
| **Respondent.** | ) |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner is a state prisoner appearing pro se. Respondent filed a response to the petition (Dkt. # 9) and provided the transcripts (Dkt. ## 10, 11) for the Court's use in evaluating Petitioner's claims. Petitioner did not file a reply. For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

*BACKGROUND*

In August 2007, Jacob Francis was in Tulsa, Oklahoma, to attend a PGA golf tournament. At approximately 3:00 a.m., on August 11, 2007, Francis was waiting for a cab outside a local strip club. He was approached by Petitioner, Cornell Joe Parker, with whom he had a conversation. Francis eventually asked Parker to give him a ride to the condominium where he was staying. Parker agreed. As Francis got in the car with Parker, two other men, William Eugene Henderson and Gerald Jerome Staples, were already in the car. Shortly after leaving the strip club, Francis became aware that both Staples and Parker were armed with handguns. After arriving at the

---

[1] Edward Evans is the current interim director of the Oklahoma Department of Corrections. Petitioner is in custody at the Davis Correctional Facility, a private prison in Oklahoma. Pursuant to Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, and Fed. R. Civ. P. 25(d)(1), Edward Evans is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note such substitution on the record.

condominium, Parker, Henderson, and Staples robbed Francis and ransacked the condo. Francis was pistol whipped, stripped naked, kicked, beaten, and shot. Although he was shot multiple times, Francis survived. As they left the condo, the assailants took Francis' car. Later that morning, the Tulsa Fire Department responded to a call of a vehicle fire. The burning vehicle belonged to Jacob Francis.

Based on those events, Petitioner and his co-defendants, Henderson and Staples, were charged with multiple felonies in Tulsa County District Court, Case No. CF-2007-4405. On June 9, 2008, Petitioner entered blind pleas of guilty to Robbery with Firearm (Count 1), Kidnapping (Count 3), Larceny of an Automobile (Count 5), Third Degree Arson (Count 6), and Felon in Possession of a Firearm (Count 8), all After Former Conviction of Felonies. He also entered a plea of no contest to Shooting with Intent to Kill, After Former Conviction of Two Felonies (Count 2).[2] On August 6, 2008, the trial judge sentenced Petitioner to twenty-five years imprisonment on each of Counts 1 and 2, ten years imprisonment on each of Counts 3 and 6, and five years imprisonment on each of Counts 5 and 8. Counts 1 and 2 were ordered to be served concurrently. Counts 3, 5 and 6 were ordered to be served concurrently with one another but consecutively to the sentence imposed in Counts 1 and 2. Count 8 was ordered to be served consecutively to Counts 3, 5 and 6. Attorney David Phillips represented Petitioner at both the change of plea hearing and at sentencing.

---

[2] On June 9, 2008, Henderson entered pleas of guilty to Counts 1, 2, 3, 5, 6, and 7, and was sentenced to life imprisonment on Counts 1 and 2, ten years imprisonment on each of Counts 3, 6, and 7, and five years imprisonment on Count 5. Counts 1 and 2 are to run concurrent with each other; Counts 3, 5, and 6 are to run concurrent with each other, but consecutive to Counts 1 and 2; and Count 7 is to run consecutive to all other counts. On December 1, 2008, Staples entered pleas of "no contest" to Counts 1, 2, 3, 5, 6, 7, and 8 and was sentenced to a total term of thirty (30) years imprisonment. The charged offense in Count 7 is Assault and Battery with a Dangerous Weapon. Petitioner was not charged with Count 7.

On August 14, 2008, Petitioner filed a motion to withdraw his pleas of guilty and no contest. The trial court conducted a hearing on the motion on October 13 and 16, 2008. See Dkt. # 11-3, Tr. Mot. Withdraw Plea Hr'g. At the hearing, Petitioner was represented by attorney Brian Martin. At the conclusion of the hearing, the trial judge overruled the motion to withdraw the pleas. Id. at 47.

Petitioner filed a petition for writ of certiorari at the OCCA. Represented by attorney Kristi Christopher, Petitioner raised four (4) propositions of error, as follows:

| | |
|---|---|
| Proposition I: | Mr. Parker was denied his constitutional right to effective assistance of counsel in entering his guilty pleas. |
| Proposition II: | Mr. Parker's plea was not knowing and voluntary because the trial court failed to properly instruct him on the range of punishments. |
| Proposition III: | Mr. Parker's sentence was excessive, particularly when his history and culpability are compared to that of co-defendant Staples. |
| Proposition IV: | The errors in this case cumulatively deprived Mr. Parker of a fair hearing and due process of law. |

(Dkt. # 9-1). On November 24, 2009, in an unpublished summary opinion filed in Case No. C-2008-1023, the OCCA denied the petition for a writ of certiorari. (Dkt. # 9-2). Petitioner did not file a certiorari appeal with the United States Supreme Court, nor did he seek post-conviction relief in the state courts.

Petitioner filed his habeas petition on November 24, 2010. (Dkt. # 1). He identifies four (4) grounds of error, as follows:

| | |
|---|---|
| Ground I: | Denial of his constitutional right to effective assistance of counsel in entering his guilty pleas |
| Ground II: | The plea was not knowing and voluntary because the trial counsel court [sic] failed to properly instruct the range of punishment |

3

>   Ground III:  The sentence was excessive, in light of the co-defendant when his history and culpability are compared to the defendant Staples
>
>   Ground IV:  The errors in this case cumulatively deprive defendant of a fair hearing (trial) and due process

(Dkt. # 1). In response to Grounds I and II, Respondent argues that the OCCA's decision was not contrary to or an unreasonable application of federal law. (Dkt. # 9). Respondent also argues that Ground III is a matter of state law and not cognizable for federal courts in habeas review and, in response to Ground IV, that there was no cumulative error. Id.

## *ANALYSIS*

### A.   Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claims to the OCCA on certiorari appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

### B.   Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In denying the petition for certiorari, the OCCA adjudicated the claims raised in the habeas petition. Thus, this Court shall review those claims under § 2254(d).

### 1. Ineffective assistance of counsel (Ground I)

In his first proposition of error, Petitioner argues that he "was denied his constitutional right to effective assistance of counsel in entering his guilty pleas." See Dkt. # 1. Petitioner argues this was a "critical stage in the prosecution" and "the denial of effective counsel . . . requires that [he] be allowed to withdraw his pleas of guilty and no contest." Id. at 7. On direct appeal, the OCCA rejected this claim, finding that Petitioner "failed to prove that counsel's performance was deficient or that he was prejudiced by deficient performance." (Dkt. # 9-2 at 3). The OCCA determined that "[t]he record shows that defense counsel researched [Petitioner's] alibi, subpoenaed witnesses, and attempted to get a continuance to further research [Petitioner's] potential alibi. [Petitioner] also met with his attorney multiple times about the case and spent sufficient time reviewing the plea form." Id. at 2. Respondent argues that "Petitioner merely had 'buyer's remorse' after he was sentenced . . . [and that he] cannot establish that the decision of the [OCCA] . . . is contrary to or an unreasonable application of Strickland [v. Washington, 466 U.S. 668, 687 (1984)]." (Dkt. # 9 at 14).

5

To be entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication was an unreasonable application of Strickland. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court set out the applicable

standard for reviewing ineffective assistance of counsel claims in the context of guilty pleas. In accord with Strickland, a defendant challenging the effective assistance of counsel during the guilty plea process must show that counsel's performance was deficient and that such deficient performance prejudiced him. Id. at 57-58. As the Court explained in Hill,

> [I]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence . . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Id. at 58-59. However, "a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001) (quoting Hill, 474 U.S. at 59). Rather, the Court "look[s] to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." Id.

Petitioner claims that "if not for the actions of trial counsel, he would not have agreed to enter a blind plea on the eve of trial." (Dkt. # 1 at 7). Petitioner organizes his claim of ineffective assistance of counsel into two categories. First, he claims that the "plea process was affected by the failure of . . . counsel to adequately prepare and present a defense." Id. at 9. Second, Petitioner claims that "[c]ounsel's communication with [Petitioner] was deficient and misleading and affected the knowing and voluntary character of Petitioner's blind pleas." Id. at 13. Both of these categories rely on Petitioner's allegation that his trial attorney told him that it would be better to sign a plea because "there was no defense for trial," even though Petitioner insisted he wanted to go to trial and that he had a possible alibi. Id. at 9, 13.

7

Prior to the hearing on the motion to withdraw the guilty pleas, Petitioner filed a pro se document with the trial court. It read, in part,

> Attorney persuaded me to take a blind plea, which I feel was a mistake, I believe my Attorney may have even lied to me in order to persuade me into taken [sic] the Plea bargain. My Attorney did not fully explain the Plea Agreement I never would of signed. I never wanted to take a Plea. I wanted to go to trial, but I felt my Attorney was not tryna [sic] defend me. I feel my Attorney was never at my defence [sic].

Id. at 8. Petitioner also argues that "[a] critical circumstance in entering guilty pleas is knowledge of the consequences, particularly the applicable ranges of punishment." Id. at 14 (citing Hunter v. State, 825 P.2d 1353, 1355 (Okla. Crim. App. 1992)). Petitioner contends that because counsel improperly advised him of the sentencing ranges, counsel's performance was deficient under the Strickland standard and Petitioner should be allowed to withdraw his guilty pleas. Id. at 16.

The record refutes Petitioner's claims that his attorney provided ineffective assistance during either the change of plea hearing or during sentencing. First, nothing in the record suggests that Petitioner did not understand the consequences of entering a blind plea or that he did not discuss the blind plea with his attorney. See Dkt. # 11-1, Tr. Change of Plea Hr'g at 8; Dkt. # 11-3, Tr. Mot. Withdraw Plea Hr'g at 8-9, 14-15. At the change of plea hearing, Petitioner testified that he understood the ranges of punishment as read to him by the trial judge. See Dkt. # 11-1 at 3-4. Petitioner testified that he went through the plea form with his attorney. See Dkt. # 11-3 at 22. Although counsel incorrectly advised Petitioner as to the range of sentences for Counts 5, 6, and 8,[3]

---

[3] During Petitioner's change of plea hearing, the trial judge, reading from the blind plea form, also known as a "Lumpkin form," advised Petitioner that the range of punishment for Count 5, Larceny of an Automobile, was six years to life. The prosecutor corrected the trial judge, stating that Count 5 carried nine years to life. (Dkt. # 11-1, Tr. Change of Plea H'rg at 4). Petitioner was sentenced to five years imprisonment on Count 5, or below the minimum statutory sentence. The sentencing range for Count 6, Third Degree Arson, After Former Conviction of Two Felonies, was four years to life. Petitioner was incorrectly advised the

see Dkt. # 9-2 at 3, Petitioner fails to show how this error affected the sentence he received. Furthermore, Petitioner did not raise the issue when the prosecutor, in open court, corrected the trial court as to the possible sentence for Larceny of an Automobile, Count 5. See Dkt. # 11-1, Tr. Change of Plea Hr'g at 3-4. Finally, Petitioner signed the plea form, in which he stated that "I helped co-defendants rob Jacob Francis with a gun . . . and stole his car and burned his car, and I had a firearm in my possession." (Dkt. # 11-3 at 21-22).

Second, even though Petitioner alleges in his habeas petition that he had an alibi, at the change of plea hearing, Petitioner stated that he could not contest the facts and evidence against him. See Dkt. # 11-1, Tr. Change of Plea Hr'g at 8. In his habeas petition, Petitioner states that his counsel "did not locate the witness he wanted him to and told [Petitioner] there would be no defense to present." (Dkt. # 1 at 10-11). However, Petitioner acknowledges in his habeas petition that trial counsel filed a witness list with the trial court, which included "several witnesses available to testify [and] establish a possible alibi" for Petitioner at the time of the crime. Id. at 9.

As his alibi, Petitioner claims that he helped break up a fight at a night club on the night of the crime and that he had alibi witnesses who could confirm his whereabouts at the time of the crime. At the hearing on the motion to withdraw the guilty plea, Petitioner's trial counsel testified that he spent "15, 20 hours" investigating Petitioner's alibi witnesses, in addition to the time spent by his investigators tracking down and interviewing witnesses. (Dkt. # 11-3, Tr. Mot. Withdraw Plea Hr'g at 28). Counsel also testified that, of the individuals he was able to interview, only one

---

range of punishment was six years to life. (Dkt. # 9-2 at 3). He was sentenced to ten years imprisonment on Count 6. The sentencing range for Count 8, Felon in Possession of a Firearm, After Prior Felony Conviction, was two years to life. Petitioner was incorrectly advised that the range of punishment was four years to life. Id. He was sentenced to five years on count 8.

appeared able to testify that Petitioner was with her at the night club until 2:00 or 2:30 a.m. the night of the crime. Id. at 27-28. Of the other potential witnesses, one did not remember Petitioner being present at the fight and two others could not remember the incident. Id. The record does not indicate whether Petitioner, at the time he entered his pleas, was aware of the status of counsel's efforts to locate the alibi witnesses or if he knew the content of the anticipated testimony. Significantly, however, Petitioner's trial counsel knew the substance of the anticipated testimony when he made the strategic decision and advised Petitioner to enter a blind plea of guilty. See Strickland, 466 U.S. at 690-91 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). Nothing in the record before the Court suggests that counsel made an unreasonable decision based on his investigation and known facts.

Finally, despite Petitioner's allegations to the contrary, nothing in the record suggests that Petitioner's trial counsel failed to communicate and provide information to him during the pendency of his case. Both Petitioner and trial counsel testified that they met numerous times. Petitioner testified he met with counsel 5-10 times. See Dkt. # 11-3, Tr. Mot. Withdraw Plea Hr'g at 4. Counsel testified he met with Petitioner no less than nine times at the jail. Id. at 26. Additionally, counsel testified that he spent 20-25 minutes going through the blind pleas with Petitioner, and that he felt this was sufficient time because of Petitioner's "answers and responses, and also knowing that his background, that he had already had two prior felony convictions . . . ." Id. at 32. Even though Petitioner may have wanted more or different communication from his counsel, the record does not support Petitioner's claim of ineffective assistance of counsel.

Without more, Petitioner has failed to prove that counsel's performance was constitutionally deficient. See Strickland, 466 U.S. at 696-97 (explaining that defendants must overcome the "strong presumption" that particular decisions by counsel can be characterized as sound trial strategy). Counsel's strategic decision to recommend that Petitioner enter blind pleas of guilty was well within the range of reasonable professional assistance. Further, after a review of the record, the Court finds that Petitioner has failed to show that there was a reasonable probability that, if not for counsel's alleged errors, he would not have entered a blind plea. Petitioner's "mere allegation" that he insisted he wanted to go to trial and would have but for counsel advising him to enter a plea, "is ultimately insufficient to entitle him to relief." Miller, 262 F.3d at 1072. The OCCA's rejection of Petitioner's claims of ineffective assistance of counsel was not contrary to, or an unreasonable application of, Hill and Strickland. Therefore, Petitioner is not entitled to habeas relief on Ground I.

### 2.     Knowing and voluntary pleas (Ground II)

Petitioner's second ground for relief is that his pleas were not knowing and voluntary because he was improperly instructed on the range of punishment. (Dkt. # 1 at 16). Petitioner claims that "the trial court used erroneous information from the plea form to instruct [him] of the ranges of punishment he would be facing for Counts 6 and 8." Id. at 17. This plea form was prepared by Petitioner's trial counsel. Id. at 15-16. The OCCA acknowledged that the trial court erred in advising Petitioner of the penalty range on Counts 5, 6, and 8. (Dkt. # 9-2 at 3). However, the OCCA found that the prosecutor's correction as to the punishment range for Count 5 cured any error arising from Count 5. Id. The OCCA also denied relief as to Counts 6 and 8 because even though the "trial court was mistaken about the minimum sentence, . . . nothing in [the] record shows that mistake influenced the sentence he actually imposed." Id. The OCCA also noted that Petitioner

11

"received a windfall on his kidnapping conviction when he was sentenced to ten years" instead of twenty years to life. Id. at 4 n.2. The OCCA concluded that "[u]nder these circumstances, we cannot find that the mistake here rendered Parker's plea unknowing and involuntary." Id. at 4. Respondent argues that the OCCA's decision was "not contrary to or an unreasonable application of Supreme Court precedent on the voluntariness of a plea of guilty." (Dkt. # 9 at 15).

In Boykin v. Alabama, 395 U.S. 238 (1969), the Supreme Court held that a guilty plea must be entered into "knowingly and voluntarily." A plea is not voluntary unless the defendant knows the direct consequences of his decision, including the maximum penalty to which he will be exposed. Worthen v. Meachum, 842 F.2d 1179, 1182 (10th Cir. 1988) (stating that critical inquiry is whether defendant knows of maximum possible sentence), overruled on other grounds, Coleman v. Thompson, 501 U.S. 722 (1991). Furthermore, it is not necessary that the record reflect a detailed enumeration and waiver of rights as a result of the guilty plea; rather the issue is simply whether the record affirmatively shows that the guilty plea was intelligent and voluntary. Stinson v. Turner, 473 F.2d 913 (10th Cir. 1973). Although a petitioner's statements made at the guilty plea hearing "are subject to challenge under appropriate circumstances," they constitute "a formidable barrier in any subsequent collateral proceeding." United States v. Maranzino, 860 F.2d 981, 985 (10th Cir. 1988) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)); see also Romero v. Tansy, 46 F.3d 1024, 1033 (10th Cir. 1995).

Petitioner argues that because the trial court and his counsel advised him that the range of punishment was "actually higher than those that were statutorily permitted," the higher range "influenced his decision to plead guilty." (Dkt. # 1 at 20). This, argues Petitioner, violated his right to due process of law. The record before the Court does not support Petitioner's assertions. At

Petitioner's plea hearing, Petitioner made several statements acknowledging his awareness of the events taking place. First, the trial judge explained that Petitioner was giving up his right to a jury trial and he carefully advised Petitioner of the range of punishment for each count. (Dkt. # 11-1, Tr. Change of Plea Hr'g at 2-3). This included the aforementioned correction as to Count 5, Larceny of an Automobile, as raised by the prosecutor, id. at 4, and informing Petitioner that the sentence for Counts 1 and 2, Robbery with a Firearm and Shooting With Intent to Kill, would be subject to Oklahoma's 85% Rule. Id. Petitioner stated, under oath, that he understood the range of punishment, that he was pleading guilty to all counts except Count 2, to which he pleaded no contest, id. at 4-6, and, that he could not present any evidence to dispute the evidence to be presented by the State, should the case go to trial. Id. at 8. Petitioner also affirmed that on August 11, 2007, he, along with two co-defendants, did in fact rob Jacob Francis, using a firearm, and took property from him. See id. at 5.

At the hearing on Petitioner's motion to withdraw his pleas, Petitioner testified that, when he entered his blind pleas of guilty, he knew that meant it was "up to the judge to sentence [him]." (Dkt. # 11-3, Tr. Mot. Withdraw Plea Hr'g at 7). However, Petitioner also testified that he was not informed as to the role his prior felony convictions would play in determining his sentence, id. at 10-11, and that the incorrectly stated higher ranges of punishment, influenced his decision to plead guilty, id. at 11. The trial court conducted a careful review of the errors alleged by Petitioner and determined them to be either cured or harmless. See Dkt. # 11-3, Tr. Mot. Withdraw Plea Hr'g at 46. The OCCA agreed. See Dkt. # 9-2 at 3-4. Based on the record cited above, it is clear that Petitioner was fully informed of the consequences of his guilty pleas, that he understood that there

13

was no plea agreement defining the terms of punishment, and that he was aware that the trial court could impose the maximum sentence, up to life imprisonment.

Under the facts of this case, the Court agrees with the OCCA that the trial court's failure to advise Petitioner of the correct minimum sentences he faced on Counts 6 and 8 did not render his pleas unknowing and involuntary. In Shaw v. Johnson, 786 F.2d 993 (10th Cir. 1986), the Tenth Circuit Court of Appeals recognized a general principle that a defendant is not prejudiced by the use of an incorrect minimum sentence when the sentence imposed is within the correct sentencing range and is substantially in excess of the incorrect minimum sentence. Id. at 997-98; see also McGee v. Higgins, 568 F.3d 832 (10th Cir. 2009). That principle applies with full force and effect in this case. As set forth above and as noted by the OCCA, Petitioner was misinformed that the sentencing range for Third Degree Arson, After Former Conviction of Two Felonies (Count 6), was six years to life imprisonment, when the correct sentencing range is four years to life imprisonment. See Dkt. # 9-2 at 3. Petitioner was sentenced to ten (10) years imprisonment on Count 6. Petitioner was also misinformed that the sentencing range for Felon in Possession of a Firearm (Count 8) was four year to life, when the correct sentencing range is two years to life. Id. Petitioner was sentenced to five (5) years imprisonment on Count 8. Thus, the sentences imposed for Counts 6 and 8 were within the correct sentencing range and were substantially in excess of the incorrect minimum sentence. Any argument that Petitioner's sentence would have been substantially below the sentence imposed is purely speculative, and does not serve to render Petitioner's pleas unknowing and involuntary. He is not entitled to habeas corpus relief on this claim.

That record supports the state courts' factual determinations that Petitioner's guilty pleas were made voluntarily, knowingly, and intelligently. That factual determination is entitled to a

presumption of correctness. See 28 U.S.C. § 2254(e)(1). Petitioner has failed to rebut that presumption with clear and convincing evidence. Id. Therefore, the Court concludes that the OCCA's decision affirming the district court's denial of Petitioner's motion to withdraw his guilty pleas was neither contrary to, nor an unreasonable application of, federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on this ground.

### 3. Sentences are excessive in light of degree of culpability (Ground III)

In his third ground for habeas relief, Petitioner argues that his sentences are excessive in light of his history and comparative culpability to his co-defendants. (Dkt. # 1 at 23). Petitioner further argues that his sentences do not reflect "the clear intention of the trial judge to reward [Petitioner] with a less severe sentence than those of his more culpable co-defendants." Id. at 24. The OCCA concluded that Petitioner's sentence "does not shock the conscience of [the] [c]ourt." (Dkt. # 9-3 at 4). Respondent argues that the "interpretation of state sentencing statutes are [sic] a matter of state law, and without more, presents no federal constitutional issue cognizable in a habeas action." (Dkt. # 9 at 20 (citing Hutto v. Davis, 454 U.S. 370, 374 (1982)).

A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Federal habeas review generally ends "once we determine the sentence is within the limitation set by statute." Id. Additionally, a sentence violates the Eighth Amendment only if it is "grossly disproportionate to the severity of the crime." Ewing v. California, 538 U.S. 11, 21 (2003) (quoting Rummel v. Estelle, 445 U.S. 263, 271 (1980)). But "[t]he gross

15

disproportionality principle reserves a constitutional violation for only the extraordinary case." Lockyer v. Andrade, 538 U.S. 63, 77 (2003).

Petitioner pled guilty to Robbery with a Firearm (Count 1), Kidnapping (Count 3), Larceny of an Automobile (Count 5), Arson in the Third Degree (Count 6), and Possession of a Firearm After Former Conviction of a Felony (Count 8). See Dkt. # 11-1, Tr. Change of Plea Hr'g. Petitioner also pled "no contest" to Shooting with Intent to Kill (Count 2). Id. Each count carried a sentence of up to life imprisonment. During sentencing, the trial court acknowledged that Petitioner's "level of participation" in the crime mitigated the situation and made him "not as culpable." (Dkt. # 11-2, Tr. Sentencing at 2-3). The trial judge proceeded to sentence Petitioner, as set forth above, to a total term of forty (40) years in custody. Each sentence was within the limitations of Oklahoma law. There is no basis for habeas relief.

### 4. Cumulative error (Ground IV)

In Petitioner's final ground of error, he claims the cumulative errors deprived him of a fair hearing and violated his right to due process. (Dkt. # 1 at 29). The OCCA concluded "cumulative error did not deprive [Petitioner] of a fair proceeding." (Dkt. # 9-2 at 4). Respondent argues that there "was no accumulation of error to warrant relief." (Dkt. # 9 at 22).

In analyzing a cumulative error claim, "the task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz [ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990)). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact

16

of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471).

Based on the foregoing discussion, the Court finds that the OCCA did not unreasonably apply the cumulative error doctrine. The OCCA found that, while Petitioner's trial counsel incorrectly informed Petitioner as to the range of punishment for three of the charged offenses, the errors were either cured or harmless in light of the fact that the errors did not play a role in Petitioner's actual sentence. Id. The OCCA also noted that the trial court sentenced Petitioner below the statutory minimum required for Count 3, Kidnapping. That error clearly benefitted Petitioner. After a review of the record, the Court finds that cumulative error did not result in a violation of Petitioner's rights to due process and a fair trial. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim is contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). He is not entitled to habeas corpus relief on this ground of error.

**C.     Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

17

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall substitute Edward Evans, Interim Director, as party respondent in this case.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this case.

**DATED** this 20th day of December, 2013.

**TERENCE KERN**
**United States District Judge**